**FILED**
**Apr 17, 2026**
**02:39 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| **MARKUS VALENTINE,**<br>　　　　**Employee**,<br>**v.**<br>**VOLKSWAGEN OF AMERICA,**<br>**INC.,**<br>　　　　**Employer**,<br>**And**<br>**AMERICAN ZURICH INS. CO.,**<br>　　　　**Carrier**. | **Docket No. 2025-10-5856**<br><br>**State File No. 52744-2024**<br><br>**Judge Audrey Headrick** |

---

## EXPEDITED HEARING ORDER

---

Mr. Valentine, who disputed the validity of panels offered, requested additional benefits that Volkswagen denied based on lack of medical causation. For the reasons below, the Court holds Mr. Valentine is not entitled to relief.

### Claim History

On June 17, 2024, Mr. Valentine hurt his back by pushing racks with rollers containing heavy parts. Since he underwent a lumbar spine fusion in 2019, Volkswagen initially directed him to see his own physician. Mr. Valentine saw a nurse practitioner, who ordered a thoracic spine MRI. After receiving the MRI report, Mr. Valentine contacted Josh Heffinger, Head of Workers' Compensation. Mr. Heffinger initiated the claim on June 25, and Mr. Valentine selected Dr. David Tutor, Volkswagen's in-house doctor, from a panel.

Mr. Valentine saw various nurse practitioners, including Susan Gasque, at the in-house clinic. He received conservative care, including physical therapy, and restrictions. The nurse practitioners consistently diagnosed mid-back or thoracic-back pain. The records show no cervical complaints for pain, limited range of motion, or tenderness to palpation.

In early September, Mr. Valentine continued to report no improvement in his symptoms. NP Gasque referred him to orthopedist Dr. Rickey Hutcheson, and Dr. Tutor electronically signed off on the referral. Volkswagen neither objected to the direct referral nor offered a panel.

Dr. Hutcheson diagnosed thoracic spondylosis and a thoracic-back sprain. He ordered medication and physical therapy. He later ordered another thoracic-spine MRI due to Mr. Valentine's complaints of worsening back pain. After reviewing the results, Dr. Hutcheson concluded that Mr. Valentine's ongoing symptoms primarily arose from his thoracic spondylosis. The records show Mr. Valentine made no cervical complaints.

In October, Dr. Hutcheson placed Mr. Valentine at maximum medical improvement for the work-related thoracic-back sprain and released him to return to work full duty. He recommended that Mr. Valentine seek further treatment for his thoracic spondylosis under his personal insurance. Mr. Valentine requested a second opinion, but Dr. Hutcheson declined to recommend that.

Mr. Heffinger testified that Mr. Valentine contacted him multiple times regarding his dissatisfaction with Dr. Hutcheson's diagnoses and treatment. Mr. Heffinger stated that Volkswagen offered Mr. Valentine a second opinion at his request. From the panel offered, only Dr. Jay Jolley agreed to see him.

In the meantime, Mr. Valentine sought treatment on his own with multiple doctors. He received conservative treatment for his thoracic condition. Mr. Valentine reported having neck pain for the last nine to ten months that radiated down his right arm.

Mr. Valentine saw Dr. Jolley on March 10, 2025, and reported cervical and thoracic pain. He disclosed he sought conservative treatment for both conditions with his own physicians. Dr. Jolley diagnosed a thoracic sprain, placed him at maximum medical improvement, and released him to return to work full duty.

Mr. Valentine ultimately underwent cervical surgery in April with his own doctor. Neither the authorized treating physicians nor his own doctors causally related his cervical condition and the need for surgery to the June 17, 2024 work injury.

Mr. Valentine stated that Volkswagen paid him when he worked restricted duty from June 17, 2024, to November 1, 2024. After returning to full duty, he

worked until November 18. Mr. Valentine received short-term disability until he took a voluntary buyout.

Mr. Valentine requested that the Court appoint a neutral physician and award him temporary disability benefits. He disputed the validity of the panels offered to him and the direct referral made to Dr. Hutcheson. Mr. Valentine also asked for temporary disability benefits from June 17, 2024, until March 17, 2026, when his own doctor released him to full duty.

Volkswagen accepted the compensability of Mr. Valentine's thoracic-spine strain but objected to his requests, relying on Drs. Hutcheson's and Jolley's opinions. Likewise, it argued he is not entitled to temporary disability benefits because it accommodated Mr. Valentine's restrictions until Dr. Hutcheson placed him at maximum medical improvement.

### Findings of Fact and Conclusions of Law

Mr. Valentine must prove a likelihood of prevailing at a hearing on the merits that he is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2025); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The threshold issue is whether Mr. Valentine showed, to a reasonable degree of medical certainty, that pushing heavy racks contributed more than 50% in causing the need for medical treatment for his thoracic spondylosis and cervical spine, considering all causes. *Id.* § 50-6-102(12). As the panel-selected physician, Dr. Hutcheson's causation opinion is presumed correct unless rebutted by a preponderance of the evidence. *Id.* § 50-5-102(12)(E).

Dr. Hutcheson concluded the work-related thoracic-spine strain resolved. He diagnosed thoracic spondylosis, a degenerative condition, and concluded Mr. Valentine did not need further treatment for his work injury. Dr. Jolley agreed. Mr. Valentine presented no proof to rebut the presumption afforded to Dr. Hutcheson.

Next, the Court considers Mr. Valentine's assertions regarding the validity of the panel offered. He argued it lacked validity because he never saw Dr. Tutor and instead only saw nurse practitioners. Tennessee Compilation Rules and Regulations 0800-02-01-.06(7) (2018) permits nurse practitioners to treat employees under the direction of a supervising physician, which includes making referrals to specialists. The mere fact that he did not see Dr. Tutor does not invalidate the panel.

When the panel-selected physician makes a referral to a specialist, the employer shall be deemed to have accepted the referral, unless the employer provides the employee with a panel of three or more independent reputable physicians within three business days. *Id.* § 50-6-204(a)(3)(A)(ii). Volkswagen did not object to the referral, so the direct referral to Dr. Hutcheson is valid.

Volkswagen chose to offer Mr. Valentine a second-opinion panel at his request, but it was not required to do so. Tennessee Code Annotated section 50-6-204(a)(3)(C) states, "[w]hen the treating physician . . . refers the injured employee, the employee shall be entitled to have a second opinion on the issue of surgery and diagnosis . . . from a panel of two (2) physicians practicing in the same specialty as the physician *who recommended the surgery*." (Emphasis added). The treating physician must recommend surgery before it triggers the entitlement to a second opinion on the issue of surgery and diagnosis. *Petty v. Convention Prod. Rigging*, 2016 TN Wrk. Comp. App. Bd. LEXIS 95, at *21 (Dec. 29, 2016).

In this case, Dr. Hutcheson did not recommend surgery. Instead, he stated Mr. Valentine needed no additional treatment for the work-related thoracic-spine strain and released him. Volkswagen authorized Mr. Valentine to see Dr. Jolley. For that reason, the delay in receiving the second opinion does not entitle Mr. Valentine to another opinion.

Mr. Valentine also asked the Court to appoint a neutral physician, asserting lack of any medical opinion regarding causation. Tennessee Code Annotated section 50-6-204(d)(8) authorizes a court to appoint a neutral physician when a dispute exists as to the injury. As previously stated, two medical opinions address causation. No dispute exists regarding the compensability of the work-related thoracic-spine strain. The Court declines to appoint a neutral physician.[1]

As to temporary total disability benefits, Mr. Valentine must show: (1) a disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). For temporary partial disability benefits, he must show that Dr. Hutcheson returned him to work with restrictions that Volkswagen either could not or would not accommodate. *Id*. at *7-8. Entitlement to temporary

---

[1] Mr. Valentine referenced both an independent medical physician and a neutral physician. The Court has no authority to order an employer to offer an independent medical evaluation.

4

disability benefits end when an employee reaches maximum medical improvement. *Id.* § 50-6-207(2)(A).

Here, the proof showed that Volkswagen accommodated Mr. Valentine's restrictions and paid him until Dr. Hutcheson placed him at maximum medical improvement. Dr. Hutcheson's unrebutted testimony stated Mr. Valentine needed no further treatment for the work injury. Mr. Valentine is not entitled to temporary disability benefits for the time he saw his own doctors for his thoracic spondylosis and cervical condition. Therefore, the Court finds that Mr. Valentine is unlikely to prevail at a hearing on the merits in his request for temporary disability benefits.

Finally, the Court refers this case to the Compliance Program for consideration of possible penalty assessments based on Volkswagen's failure to timely provide a panel when Mr. Valentine reported his injury on June 17, 2024. *Id.* § 50-6-118(a)(8)-(9).

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court denies Mr. Valentine's request for benefits.

2. This case is set for a Status Hearing on **Wednesday, July 8, 2026, at 11:00 a.m. Eastern Time/10:00 a.m. Central Time**. The parties must call (423) 634-0164 or (855) 383-0001. Failure to call may result in a determination of the issues without the party's participation.

3. This case is referred to the Compliance Program for consideration of a penalty for Volkswagen's failure to timely offer a panel.

**ENTERED April 17, 2026.**


*Audrey A. Headrick*
**JUDGE AUDREY HEADRICK**
**Court of Workers' Compensation Claims**

5

# APPENDIX

<u>Exhibits</u>:

1. Rule 72 Declaration of Mr. Valentine
2. Volkswagen injury packet
3. Medical records of CHI Memorial Family Practice Associates
4. Volkswagen medical clinic notes
5. Medical records of Dr. Hutcheson
6. Medical records of Dr. Jolley
7. Medical records of Chattanooga Bone and Joint
8. Progressive Health Functional Testing Medical History Questionnaire
9. Form C-42 signed and dated June 25, 2024
10. Dr. Tutor's medical records
11. Referral order
12. Form C-42 (no signature or date)
13. Medical records of Parkridge Medical Group Spine Surgery Associates
14. Text messages (For identification purposes only)

## CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as shown on April 17, 2026.

| Name | Mail | Email | Service sent to: |
|---|---|---|---|
| Markus Valentine, Employee | X | X | markcusvalentine@yahoo.com 1255 Blythe Ferry Road NE, Apt 6 Cleveland, TN 37312 |
| Jeffrey Powell, Employer's Attorney | | X | jeffrey.powell@gilsondaub.com |
| Compliance Program | | X | WCCompliance.program@tn.gov |

_____

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**

7



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**NOTICE OF APPEAL**
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

**Statement of the Issues on Appeal**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

**Parties**

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*